**HUMBLE OIL & REFINING CO. v. MONROE et al.**

No. 12665.

Court of Civil Appeals of Texas. Dallas.

April 29, 1939.

Rehearing Denied May 27, 1939.

R. E. Seagler and K. W. Gilmore, both of Houston, for appellant.

W. B. Harrell and Russell Allen, both of Dallas, for appellees.

BOND, Chief Justice.

This is an appeal from an order overruling defendant's plea of privilege to be sued in Ward County, pursuant to Subd. 14, Article 1995, R.S., providing: "Suits for the recovery of lands or damages thereto * * * must be brought in the county in which the land, or a part thereof, may lie".

Construing plaintiffs' petition, the primary, dominant and ultimate purpose of the suit is to recover upon a contract attached to plaintiffs' petition: First, that, by the terms of the contract, the defendant unconditionally agreed to pay plaintiffs $13,000, out of 7/32nds of the first oil and/or gas produced and saved from assigned leases on lands lying in Ward County, Texas, in the event of commercial production; and, second, in the alternative, if defendant did not unconditionally agree to pay plaintiffs the $13,000, then, by the terms of said contract, the defendant was bound to develop said leases and pay plaintiffs out of the first 7/32nds of the oil and gas produced and saved, and, having failed to properly develop the leases, was bound in damages to said amount.

Where suit is based upon a written contract attached to plaintiffs' petition, showing upon its face that the only cause of action asserted, or could be asserted, was one for an interest in land, or for profits or damages arising out of land, it becomes the duty of the trial court to look to the contract to ascertain if plaintiffs have stated a cause of action. The attached contract takes precedence over the allegations of the petition. In other words, when plaintiffs attach a copy of a contract to their pleadings, the court must look to the contract to see if the interpretation placed thereon by plaintiffs' pleadings bears out their cause of action. Plaintiffs cannot defeat the true venue of a suit by so pleading their interpretation of the contract as to confer venue on the trial court, if, in fact, their interpretation is erroneous.

The contract sued upon, which is in the form of a letter dated November 16, 1933, evidences the agreement between the parties, the terms of which, pertinent here, are as follows:

"This letter will evidence an agreement entered into this date wherein you agree to sell and the Humble Oil and Refining Company agrees to purchase an oil and gas lease on the 7/8 working interest on all of section 231, in Block 34, H. & T. C. Railway Co. Survey, containing 640 acres, and the Northwest one-half of the North quarter and the South quarter of the North

quarter, and the Southeast one-half of the East quarter, and the West quarter of the East quarter, and all of the South quarter of Section 2, Block 1, W. & N. W. Ry. Co. Survey, Ward County, Texas, containing 400 acres, subject to the following terms and conditions. * * *

"It is understood that the Humble Oil & Refining Company is purchasing a Texas Commercial 88-Form oil and gas lease executed by two lessors. Lease from one of the lessors for an undivided one-half interest will expire March 15, 1935, and lease on the other undivided one-half interest will expire on November 1, 1939, unless held by commercial production of oil or gas.

"We also understand that a well is being drilled by the Rector Oil Company, et al., on Scrap File Section 31½, which is a part of this same lease.

"The total consideration to be paid under the terms of this contract is $26,000.00 and settlement will be made upon the following basis subject to acceptance of title: $6,500.00 will be paid when title is approved, an additional $6,500.00 will be paid immediately upon completion of a well that is now being drilled in Section 31½, Scrap File 7666, Ward County, Texas, by the Rector Oil Co., et al., to a depth of 50 feet in the Delaware formation unless an oil well capable of producing ten barrels of oil per day or 1,000,000 cubic feet of gas per day, is secured, or water encountered in the Delaware formation at a lesser depth.

"It is further agreed that in order to secure this additional $6,500.00 said well is to be completed as above specified within 180 days from this date.

"The additional consideration of $13,000.00, set out above, is to be paid out of 7/32 of the first oil and/or gas produced and saved from said lease in the event of commercial production on the lands above described. * * *

"The Six Thousand Five Hundred Dollars ($6,500.00) herein escrowed is to be paid as follows: To Louise Price Shipley $2500.00; to Cynthia L. Monroe $4000.00. The additional Six Thousand Five Hundred Dollars ($6,500.00) to be paid upon completion, as above specified, of the Rector Oil Company well in Section 31½, will be paid on a draft from the Humble Oil and Refining Company as follows: To Louise Price Shipley $3875.00; to Cynthia

L. Monroe $2625.00. The consideration of Thirteen Thousand Dollars ($13,000.00) to be paid out of oil will be paid as follows: To Louise Price Shipley $7750.00; and to Cynthia L. Monroe $5250.00".

It will be seen that the contract is definite as to when the first $6,500 will be paid— payable upon acceptance of title by the assignee. The second $6,500 was payable upon completion of a well that was then being drilled by the Rector Oil Company et al. to a depth of 50 feet in the Delaware formation, unless an oil well capable of producing ten barrels of oil per day, or 1,000,000 cubic feet of gas per day, was secured, or water encountered at a lesser depth. These provisions leave the time of making payment of the second $6,500 rather indefinite, as there were no assurances as to when this well would be completed in the manner stipulated; however, it further provides that the well was to be completed within 180 days from the date of the letter. The contract, in a way, makes definite the two $6,500 payments, on conditions other than the securing of oil and gas on the leased premises. These contract installments were promptly paid.

The additional consideration of $13,000, the amount involved in this suit, is contracted to be "paid out of 7/32 of the first oil and/or gas produced and saved from said lease in the event of commercial production on the lands above described". The contract discloses no obligation on the part of Humble Oil & Refining Company to drill the land, and there is no evidence in the record that the assigned leases would, if properly developed, produce any oil or gas, or that the assignee was negligent in not drilling and developing said leases; or that any prudent operator would have drilled said land; or that the leases were on proven oil or gas strata. Therefore, the contract showing no unconditional promise to pay the $13,000, same to be paid only out of 7/32nds of the first oil and gas produced and saved from the leases, plaintiffs' petition evidences a suit involving an interest in land, or damages and profits arising out of land. In other words, to say the least of it, the petition shows on its face that the major objective is to secure $13,000 for 7/32nds of the first oil and/or gas produced from the land, or to secure an accounting for failure, or alleged breach of contract to secure oil, which, in any event, constitutes a claim arising out of land; hence, an interest in the land itself.

456

Our courts have now definitely settled that such an action must be brought in the county where the land lies, pursuant to Subd. 14 of R. S. Article 1995. Elder v. Miller, Tex.Civ.App., 116 S.W.2d 1171; Frost v. Standard Oil Co. of Kansas, Tex.Civ.App., 107 S.W.2d 1037; Robinson v. O'Keefe, Tex.Civ.App., 107 S.W.2d 419; Budde v. Navarro Oil Co., Tex.Civ.App., 125 S.W.2d 1055. The underlying reasons for these holdings are clearly stated in the opinion, thus we forego burdening the record with further discussion.

These conclusions require a reversal of the judgment of the trial court and judgment sustaining defendant's (appellant) plea of privilege; accordingly, the judgment is reversed and venue of the cause is transferred to the District Court of Ward County, Texas, where the land involved is situated.

Reversed and rendered.